UNITED STATES of America, Plaintiff,

v.

James H. LUCERO and Charles
L. Lacroix, Defendants.

Nos. 95–10036–01, 95–10036–02.

United States District Court,
D. Kansas.

May 25, 1995.

**1422**

Craig Shultz, Shultz & Lonker, Chartered, Wichita, KS, for James H. Lucero and James H. Lucero, Wichita, KS, pro se.

Eric A. Commer, Wichita, KS, for Charles L. Lacroix and Charles L. Lacroix, Wichita, KS, pro se.

Debra L. Barnett and Annette B. Gurney, Office of United States Attorney, Wichita, KS, for the U.S.

### MEMORANDUM AND ORDER

THEIS, District Judge.

Defendants are charged with interfering by physical obstruction with persons obtaining or providing reproductive health services in violation of the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248(a)(1). Specifically, the United States alleges that the defendants welded themselves into vehicles, thereby blocking the entrances to a clinic in Wichita, Kansas, where abortions are performed.

The matter is before the court on motions filed by the defendants and by the United States. Defendants move first for dismissal of the charges on the ground that the Freedom of Access to Clinic Entrances Act ("the Act") is unconstitutional. (Doc's 23, 29). Defendants also seek to present the defense of necessity/jury nullification at trial by calling witnesses to testify as to the scientific and philosophical implications of abortion. (Doc. 24). Finally, defendants present several discovery motions. (Doc.'s 15, 19, 25–28). The court held a hearing on May 15, 1995, at which several of these matters were discussed and at which the court set forth its expectations for trial procedure in this matter. As the court indicated at that hearing, the court has read the parties submissions and the relevant case law and is prepared to rule. Since the hearing, the government has filed a motion in limine (Doc. 37), and the defendants have filed a motion for a bill of particulars. (Doc. 36).

### I. Motion to Dismiss

Defendants seek dismissal of the charges against them. Defendants argue that the Act is unconstitutional for several reasons. Defendants first contend, in a motion filed *pro se*, that the Supreme Court, in *Planned Parenthood v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), determined

that abortion is itself unconstitutional. This argument is based on a selective and mistaken reading of the *Casey* decision. The Supreme Court did not declare abortion unconstitutional and, in fact, reaffirmed the general right of a woman to choose to have an abortion. *Id.* at ——, 112 S.Ct. at 2804.

Defendants' second argument is that Congress had no power under the Commerce Clause or under section 5 of the Fourteenth Amendment to enact this legislation. Article I of the Constitution gives Congress the power to regulate commerce "among the several states." U.S. Const., Art. I, § 8, cl. 3. Under the Commerce Clause, Congress has the power to regulate not only the instrumentalities and channels of interstate commerce itself, but also intrastate activity which has a substantial effect on interstate commerce. *United States v. Lopez,* —— U.S. ——, ——, 115 S.Ct. 1624, 1628, 131 L.Ed.2d 626 (1995). Legislation is valid under the Commerce Clause if Congress (1) had any rational basis to conclude that the regulated activity substantially affects interstate commerce and (2) chose a regulatory means reasonably adapted to its permissible ends. *Hodel v. Virginia Surface Mining & Recl. Ass'n,* 452 U.S. 264, 276, 101 S.Ct. 2352, 2360, 69 L.Ed.2d 1 (1981) (enunciating standard); *Lopez,* —— U.S. at ——, 115 S.Ct. at 1630 (holding that proper question is whether regulated activity "substantially affects" interstate commerce).

Several district courts and the Fourth Circuit Court of appeals have addressed the constitutionality of the Access Act under the Commerce Clause, and only one district court has held the Act unconstitutional. *American Life League v. Reno,* 47 F.3d 642 (4th Cir.1995); *Reno v. Dinwiddie,* 885 F.Supp. 1286 (D.Mo.1995); *Riely v. Reno,* 860 F.Supp. 693 (D.Ariz.1994); *Cook v. Reno,* 859 F.Supp. 1008 (W.D.La.1994); *Council for Life Coalition v. Reno,* 856 F.Supp. 1422 (S.D.Cal.1994); (upholding statute). *But see, United States v. Wilson,* 880 F.Supp. 621 (E.D.Wis.1995) (holding statute invalid under Commerce Clause). This court agrees with the Fourth Circuit and the majority of dis-

trict courts which have addressed the issue that Congress acted within its Commerce Clause power in enacting the Access Act.

An extensive legislative record supports Congress' determination of the substantial effect on interstate commerce of violence, threats, and physical obstructions at reproductive health facilities. *American Life League,* 47 F.3d at 647. Such activities by opponents of abortion have been documented throughout the country and have been organized across state lines. Furthermore, Congress found that many patients travel across state lines to obtain reproductive health services and other medical services, and that physicians travel across state lines to provide such services. Reproductive health facilities buy medical and office supplies that move in interstate commerce. S.Rep. No. 117 at 3; H.R.Conf.Rep. No. 488 at 7.

One of the primary stated purposes of the regulated anti-abortion activities has been to close abortion clinics by causing physical destruction of facilities, causing or threatening physical injury to physicians, clinic workers and patients, and by physically blocking access to clinics. The regulated activities have, in fact, caused some clinics to close, at least temporarily. Many of these clinics provide medical and related services other than abortion.[1]

There is no dispute that the provision of reproductive health services and other medical and related services constitutes commerce. Moreover, the court holds that Congress rationally concluded that the regulated activities substantially affect interstate commerce, due to the interstate movement of supplies, as well as interstate travel by providers and patients. In this way, the Access Act differs significantly from the Gun Free School Zones Act, which the Supreme Court recently struck down in *Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626. The Gun Free School Zones Act "by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Id.* at ——, 115 S.Ct. at 1630–31. The Access Act, by con-

---

1. The court notes that the Access Act, by its terms, protects facilities which provide counsel-ling and medical services for those seeking alternatives to abortion. 18 U.S.C. § 248(e)(5).

trast, regulates conduct which, by its very design, threatens a particular type of commerce—the provision of reproductive health services.[2]

Finally, the court agrees with the Fourth Circuit's determination that Congress chose means reasonably adapted to permissible ends. *Id.* at 647. The Act's prohibitions and penalties are reasonably designed to protect the free flow of goods and services in interstate commerce, as well as protect the safety of patients seeking and clinic workers providing abortions and other medical and related services and protect reproductive health care facilities from physical destruction and damage. *Id.*

Because the court concludes that the Access Act was properly enacted under Congress' Commerce Clause power, the court need not address the defendants' arguments relating to Congress' power under section 5 of the Fourteenth Amendment.

■ Next, defendants argue that the Act violates their First Amendment rights. As an initial matter, the court concludes that the Access Act is viewpoint neutral. *Id.* at 648–51. The Act applies equally to abortion opponents and abortion rights supporters. *Id.* at 649. The Access Act's motive element does not render the Act viewpoint based. *Id.* at 650 (citing *Wisconsin v. Mitchell,* —— U.S. ——, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993), in which the Supreme Court upheld state statute providing enhanced penalty for aggravated battery when victim selected because of race). Rather, the motive requirement targets the precise conduct which Congress has determined affects reproductive health services as an aspect of interstate commerce. Furthermore, the Access Act is not viewpoint based simply because one side of the abortion debate is more likely to violate the law. *Id.* at 651 (citing *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (upholding statutory prohibition on burning draft cards)).

Where, as here, in regulating nonspeech elements of conduct, a viewpoint-neutral stat-

ute may incidentally limit speech, the court applies intermediate scrutiny, under which the statute is constitutional "if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679.

The Access Act furthers important governmental interests in protecting patients, physicians and clinic staff from harm and preventing physical destruction of medical and related facilities, which, as described above, have various ties to interstate commerce. *American Life League,* 47 F.3d at 651. Furthermore, the government has a strong interest in protecting persons from violence when they seek to exercise their constitutional rights, including the right to terminate or continue a pregnancy, obtain contraception, and otherwise seek medical and related services. *Id.*

Second, the Access Act is not related to the suppression of expression. As discussed above, it is viewpoint neutral and is aimed at harmful conduct rather than expression.

Third, any incidental restriction on alleged First Amendment freedoms is no greater than necessary to meet the government's interests. *Id.* at 652. Threats and violence are entitled to no protection as expression. *Id.* The Act also prohibits some nonviolent protest, but only that by which the actor intends to physically block access to a clinic. This prohibition is no more restrictive than necessary to achieve the government's legitimate goal. *Id.* As discussed below, those who wish to protest at reproductive health facilities certainly can do so in a peaceful, non-obstructive manner and will not thereby violate the Act.

■ Finally, the defendants contend that the Act is unconstitutionally vague and overbroad. The defendants point to various terms within the Act, arguing that each is vague and/or overbroad. Defendants argue

---

2. The district court in *Wilson* focused on the non-commercial nature and purpose of the regulated activity itself rather than the effect of that conduct on interstate commerce. *Wilson,* 880 F.Supp. at 628, 629.

that the term "interfere" is unconstitutionally vague, ignoring that the Act restricts the term in several ways. First, "interfere with" is defined as "to restrict a person's freedom of movement." 18 U.S.C. § 248(e)(2). Second, only interfering by "force or threat of force or ... physical obstruction" is prohibited. The words force and threat are reasonably understandable, and the Act defines physical obstruction as "rendering impassable ingress to or egress from...." § 248(e)(4). Thus, defendants' argument that the Act prohibits, or could be read to prohibit, a single individual holding a sign who happens to be in the path of someone who wishes to enter a clinic and must walk around is without merit. Third, any fear that the Act reaches peaceful picketing and other protected expressive conduct is unfounded because the Act specifically states that it does not reach such conduct. § 248(d)(1). The term "interfere," in the context of the statute, is sufficiently clear to give fair warning of what conduct is prohibited.

Defendants also quarrel with the words "injure" and "intimidate." The word "intimidate" is defined in the statute as "to place a person in reasonable apprehension of bodily harm to him- or herself or to another." Defendants' argument notwithstanding, this is a comprehensible standard, quite similar to the definition of assault. See, e.g., Pattern Instructions for Kansas (Criminal) 56.12 (listing elements of assault under Kansas law). Although the defendants are not satisfied with the definitions supplied in the Act, they also complain that the word "injure" is not defined in the Act, leaving it open to such a broad interpretation that a person could violate the Act merely by protesting in a way that "shocks the conscience" of patients or clinic workers. The court disagrees. See American Life League, 47 F.3d at 653. Again, the Act prohibits injury only by force, threat of force, or physical obstruction, and specifically states that it does not reach protected expression. § 248(a)(1) and (d)(1).

Accepting defendants' arguments regarding vagueness and overbreadth would require the court to give each term a strained and unreasonably broad interpretation and to analyze each allegedly vague word in isolation, rather than in relation to the statute as a whole or in light of the terms which modify it. This would not be proper statutory construction. *United States v. X-Citement Video, Inc.,* —— U.S. ——, ——, 115 S.Ct. 464, 472, 130 L.Ed.2d 372 (1994) (canon of statutory interpretation to construe statute in way that eliminates constitutional doubts so long as not plainly contrary to intent of Congress). The Access Act gives sufficient guidance that a person of ordinary intelligence can reasonably determine what conduct is prohibited. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). Defendants do not argue that they had a reasonable basis to believe that their own alleged conduct would not violate the Act. Furthermore, the Act is sufficiently narrow that it does not reach expressive conduct protected by the First Amendment, and certainly does not reach a substantial amount of protected expression so as to justify striking down the statute altogether. *See Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973) ("where conduct and not merely speech is involved, the overbreadth of a statute must be not only real, but substantial as well").

■ Defendant Lucero argues that even if the statute is not facially invalid, it is unconstitutional as applied to him because the "defendant engaged in expressive conduct, intended to communicate his view that legal abortion denies justice to the unborn." The court rejects this argument. Criminal conduct is not rendered protected speech in a given case merely because the actor intended to send a message, political or otherwise. *See O'Brien,* 391 U.S. at 376, 88 S.Ct. at 1678. Again, defendant is charged because of his conduct, not because of his message. Defendant also speculates that had he engaged in the same conduct with the purpose of expressing support for legalized abortion, he would not have been charged. There is no support for this argument.

## II. Motion to Present Defense

■ The defendants seek to present evidence of "what abortion is and what abor-

tions do" in support of their defenses of necessity and jury nullification. Specifically, defendants wish to call as witnesses doctors who would testify to medical details and philosophical implications of abortion. The court denies the motion.

The necessity defense is inapplicable in a case of this type because legal alternatives exist to achieve the goal of persuading women not to have abortions and persuading clinic employees not to provide abortion services. *United States v. Turner*, 44 F.3d 900, 902 (10th Cir.1995). Accordingly, defendants' argument that they should be permitted to present evidence relevant to a necessity defense is without merit.

■ As for jury nullification, the court should not encourage the jurors to violate their oath by refusing to apply the law as given in the court's instructions. *United States v. Trujillo*, 714 F.2d 102, 105–06 (11th Cir.1983). Therefore, the courts overwhelmingly agree that jury nullification instructions would be improper. *United States v. Grismore*, 546 F.2d 844, 849 (10th Cir.1976). *See also, e.g., United States v. Desmarais*, 938 F.2d 347 (1st Cir.1991); *United States v. Kerley*, 838 F.2d 932, 938 (7th Cir.1988); *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir.1983); *United States v. Drefke*, 707 F.2d 978 (8th Cir.), *cert. denied*, 464 U.S. 942, 104 S.Ct. 359, 78 L.Ed.2d 321 (1983). In fact, the court in *United States v. Dougherty*, 473 F.2d 1113, 1136–37 (D.C.Cir.1972), the case cited by the defendants, reached the same conclusion. For the same reason, the defense is not entitled to argue jury nullification in its closing argument. *Id.* at 106.

■ Likewise, defendants are not entitled to present evidence which is irrelevant for any purpose other than to provoke the finder of fact to disregard the law. The evidence defendants wish to present is irrelevant to any material issue in the case and is thus to be excluded under Federal Rule of Evidence 402. Furthermore, even if such evidence were relevant, its probative value would be substantially outweighed by the likelihood that its presentation would result in unfair prejudice and confusion of the issues. The court would, therefore, exclude the evidence under Federal Rule of Evidence 403.

■ On a related subject, the United States has filed a motion in limine seeking to preclude the defendants from asking patients and clinic workers who appear as witnesses specific questions about the treatment they sought or provided at the clinic. (Doc. 37). The court agrees that questioning along these lines would be improper as it would be irrelevant to any material issue and unfairly prejudicial. Therefore, the court grants the United States' motion.

## III. Discovery Motions

The defendants have filed several motions for discovery of *Brady* evidence, Rule 16 materials and Rule 404(b) evidence. The United States responds that it is aware of its continuing discovery obligations and intends to comply with those obligations. Moreover, at the pretrial hearing, the parties and counsel agreed on discovery procedures and indicated to the court that there are no disputes concerning what material is subject to pretrial disclosure. The United States has also expressed its agreement to pretrial disclosure of witness statements in the interest of avoiding delay at trial. Accordingly, the court grants the defendants' motions to the extent that the information they seek is covered by *Brady*, Rule 16, or Rule 404(b). To the extent that the motions fall outside these authorities, they are denied. The court will address any disputes as they arise.

## IV. Motion for Bill of Particulars

■ Defendant Lucero has moved for a bill of particulars stating the precise actions which the government contends violates the Access Act and stating whether the government alleges any violence in the commission of the offense. The court agrees with the government that the information and the supporting affidavit contain specific enough information that a bill of particulars is not necessary. The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to permit adequate defense preparation, avoid surprise at trial, and raise a defense of double jeopardy. *United States v. Cole*, 755 F.2d 748 (11th Cir.1985). "A bill of particulars

may not be used to compel the Government to disclose evidentiary details or 'to explain the legal theories upon which it intends to rely at trial.'" *United States v. Gabriel*, 715 F.2d 1447, 1449 (10th Cir.1983). The court, therefore, denies the defendants' first request.

As for defendant's second request, the United States responds that its theory is that the defendant's conduct was "exclusively a nonviolent physical obstruction" under the statute, which would subject the defendants to a maximum term of imprisonment of six months and a maximum fine of $10,000. 18 U.S.C. § 248(b). Accordingly, the defendant's motion for a bill of particulars on this issue is moot.

**IT IS BY THIS COURT THEREFORE ORDERED** that defendant Lucero's motion to dismiss is hereby denied.

**IT IS FURTHER ORDERED** that defendant LaCroix's motion to dismiss is hereby denied.

**IT IS FURTHER ORDERED** that the United States' motion in limine (Doc. 37) is hereby granted.

**IT IS FURTHER ORDERED** that defendants' discovery motions (Doc's 15, 19, 25–26) are granted in part and denied in part as discussed above.

**IT IS FURTHER ORDERED** that defendant Lucero's motion for a bill of particulars (Doc. 36) is hereby denied.