## UNITED STATES v. STOBO.

(District Court, D. Delaware. May 18, 1918.)

No. 2.

1. HOMICIDE ⬡⟿92—THREATS TO TAKE LIFE OF PRESIDENT.

An oral threat to take the life of the President violates Act Feb. 14, 1917.

2. HOMICIDE ⬡⟿92—THREATS TO TAKE LIFE.

Under Act Feb. 14, 1917, making it a crime to threaten the life of the President, it is not necessary that the threat be communicated, or be

⬡⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
251 F.—44

intended to be communicated, to the President; nor does it need to have a tendency to cause action or nonaction on his part.

3. HOMICIDE ⟠92—THREATS TO TAKE LIFE.

An oral threat to take the life of the President need not be addressed or spoken to any person, to be punishable under Act Feb. 14, 1917.

4. HOMICIDE ⟠92—THREATS TO TAKE LIFE.

Under Act Feb. 14, 1917, providing punishment for threats against the life of the President, whether the words constituting the threat are used lightly, or with a set purpose to kill, is immaterial.

5. HOMICIDE ⟠268—THREATS TO TAKE LIFE—JURY QUESTION.

Whether the words, "The President ought to be shot and I would like to be the one to do it," constituted a threat to take the life of the President, under Act Feb. 14, 1917, depends on the circumstances, as a threat may be either conditional or absolute and the question should be submitted to the jury under proper instructions.

6. INDICTMENT AND INFORMATION ⟠121(5)—BILL OF PARTICULARS—USURPATION OF FUNCTIONS OF GRAND JURY.

Where an indictment sets forth all the essential elements of an offense, the filing of a bill of particulars under the order of the court would not involve any usurpation upon the functions of the grand jury.

7. HOMICIDE ⟠92—THREATS TO TAKE LIFE.

An oral threat against the President, unheard by any one except the accused, cannot constitute the threat denounced by Act Feb. 14, 1917.

8. HOMICIDE ⟠141(2)—THREATS TO TAKE LIFE—INDICTMENT.

An averment, in an indictment under Act Feb. 14, 1917, that an oral threat was made against the President, does not necessarily imply that it was made in the hearing of any person other than the accused, and in absence of such allegation the indictment is demurrable.

John Stobo was indicted for violation of Act Feb. 14, 1917, and he demurs to the indictment. Demurrer sustained.

Charles F. Curley, U. S. Atty., of Wilmington, Del.
Herbert H. Ward, of Wilmington, Del., for defendant.

BRADFORD, District Judge. An indictment has been found against John Stobo charging him with violation of the act of Congress of February 14, 1917 (39 Stat. 919, c. 64). The act is as follows:

"Any person who knowingly and wilfully deposits or causes to be deposited for conveyance in the mail or for delivery from any post office or by any letter carrier any letter, paper, writing, print, missive, or document containing any threat to take the life of or to inflict bodily harm upon the President of the United States, or who knowingly and wilfully otherwise makes any such threat against the President, shall upon conviction be fined not exceeding $1,000 or imprisoned not exceeding five years, or both."

The indictment contains three counts. The first count sets forth:

"That heretofore, that is to say, on the first day of September, A. D. 1917, at Wilmington, in the State and District of Delaware and within the jurisdiction of this court, that John Stobo, late of the District aforesaid, did then and there, knowingly, wilfully, unlawfully and feloniously make a threat to take the life of and to inflict bodily harm upon the President of the United States, that is to say, at Wilmington, in the State and District aforesaid, on the said date did make said threat by uttering the language following, namely, 'The President ought to be shot and I would like to be the one to do it,' or words substantially to that effect, meaning thereby to refer to the President of the United States, contrary to the form," etc.

⟠For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The second count is in all respects similar to the first save that the date on which the defendant is alleged to have uttered the language attributed to him is "a day within the period of three weeks prior to the sixteenth day of September, A. D. 1917." The third count is in all respects similar to the second save that the place where it is alleged the defendant made use of the language attributed to him is stated as "the premises known as No. 1811 Washington Street, in the said City of Wilmington, State and District of Delaware." It will be perceived that the language attributed to the defendant is precisely the same in each count. The defendant has demurred to the indictment and has assigned fifteen causes of demurrer.

[1] In discussing these causes I find it convenient to depart from the order in which they are numerically arranged and also for the sake of brevity to group them. The 10th, 11th and 15th causes of demurrer are based upon the omission from the indictment of any averment that the supposed threat was made "in writing" or "by means of or was contained in any letter, paper, writing, print, missive or document"; the demurrant alleging that the statute does not denounce "spoken words as a crime punishable thereunder." It is contended that the words "otherwise makes any such threat" in the latter part of the act refer to a written or printed threat, and not to an oral one. This position I regard as clearly untenable. The word "such" has no reference to print or writing, but to "any threat to take the life of or to inflict bodily harm upon the President of the United States." The context leaves no reasonable doubt on this point. The word "otherwise" as used in the latter part of the section is broad enough to include not only a written or printed threat other than one deposited or caused to be deposited for conveyance in the mail or for delivery from a post office or by letter carrier, but also an oral threat. I perceive no ground on which the meaning of "otherwise" can legitimately be so restricted as to exclude an oral threat against the President of the United States. To so limit the term would not only violate the language of the act but largely defeat its broad policy. Causes of demurrer Nos. 10, 11 and 15 must, therefore, be disregarded as insufficient.

[2] The 3d, 4th, 5th, 6th, 12th and 14th causes of demurrer all rest upon the assumption that a threat to kill or do bodily harm to the President in order to be punishable under the act must be communicated or intended to be communicated to him. I can find nothing in the act or in any well-considered case to justify this contention. It is argued that a threat, punishable under the act, must be a menace of such a character as to be calculated to "unsettle the mind of the person on whom it operates, and to take away from his acts that free, voluntary action which alone constitutes consent"; and that the language imputed to the defendant could not have "any of the effects or influences upon the mind of the person threatened which are necessary ingredients of a threat." The counsel for the defendant fails to distinguish between threats made for the purpose of inducing action or non-action on the part of the person against whom they are directed, and threats not made for that purpose, but calculated to breed disloyalty or hostility in the community to the constituted authorities and in-

cite a spirit of unrest and sedition. A large number of authorities have been cited to show that in the case of threats of the former class it is necessary that they should be communicated or intended to be communicated to the person against whom they are directed. But these authorities are wholly inapplicable to the case of threats denounced by the act in question. Whatever prior to the passage of the act may have been the essential nature of a criminally punishable threat or its technical significance or description, that act recognizes as punishable an oral as well as a written threat, though not communicated or intended to be communicated to the President. The question whether the threat has a tendency to cause action or non-action on his part is wholly foreign to any proper consideration of a given case. The vital inquiry under the act is whether the threat is of such a nature as to create or tend to create sedition or disloyalty, or to stir up violence toward or resistance to the lawful authority of the President, as commander-in-chief of the army and navy, or as chief executive of the nation. It is true that in United States v. French, 243 Fed. 785, the district court for the southern district of Florida held that under the act in question a threat is a "menace of such a nature and extent as to unsettle the mind of the person on whom it operates, and to take away from his acts that free and voluntary action which alone constitutes consent," and that "no particular words are necessary to constitute a threat, but these words must be intended for the person threatened." This holding does not commend itself to the judgment of this court, and is in direct opposition to the doctrine declared in United States v. Stickrath, 242 Fed. 151, decided by the district court for the southern district of Ohio a month earlier than the decision in United States v. French. In United States v. Stickrath the sufficiency of an indictment under the act in question was challenged upon the ground, among others, that "the threat was not communicated to the President." It was held that it was not necessary to a conviction that the threat should be made to the President or in his presence nor communicated to him, nor that the threat, even if communicated to the President, "should have been of such a nature and extent as to disturb or unsettle his mind to any degree, or to take away from his acts in any measure that free, voluntary action which alone constitutes consent." The court in the course of its opinion said:

"In this country sovereignty resides in the people, not in the President, who is merely their chosen representative. To threaten to kill him or to inflict upon him bodily harm stimulates opposition to national policies, however wise, even in the most critical times, incites the hostile and evil-minded to take the President's life, adds to the expense of his safe-guarding, is an affront to all loyal and right-thinking persons, inflames their minds, provokes resentment, disorder, and violence, is akin to treason, and is rightly denounced as a crime against the people as the sovereign power. The statute in question was enacted not only for the protection of the President as the representative and chosen chief executive of the nation, but also to preserve the tranquillity of the people and their peace of mind. Its passage came at a time when this country was about to be driven into and to engage in an epoch-making and substantially worldwide war, participation in which it had earnestly sought to avoid. It was then known that there were some who, on account of erratic tendencies, or mistaken views, or want of sympathy with or even loyalty to our country, were unfriendly to its aims and might, by direction or indirec-

tion, or both, endeavor to embarrass and cripple it in the great struggle upon which it was about to be forced to enter, and might by threats assail the President, and thereby inspire others to attempt his life, if they themselves should not undertake the commission of that crime. The enactment was opportune, not only on account of our past record of three presidential assassinations and the peculiar stress to which the country was about to be subjected, but that there might hereafter be a deterrent to restrain the disloyal, erratic, misguided, or wickedly disposed."

The 3d, 4th, 5th, 6th, 12th and 14th causes of demurrer must be held insufficient.

[3] The 7th and 8th causes of demurrer are to the effect that the language imputed to the defendant is not averred to have been addressed or spoken "to any particular person or persons named or described in said indictment," nor "to any person whatsoever." Both of these grounds are insufficient. It is unnecessary that the oral threat should be addressed or spoken to any person. If spoken in the hearing of any person or persons it is denounced by the act. It is not solely the effect which the spoken threat may have upon the mind of the person to whom the threat is uttered, but the effect which it may have upon the mind of any one who hears it. The purpose and policy of the act are to guard and shield from improper and dangerous influences not only the minds of those to whom the threat is uttered but equally the minds of all who may hear the words as and when uttered. There is no room for any distinction between the two cases. The 7th and 8th grounds of demurrer must, therefore, be held insufficient.

[4] The 13th cause of demurrer is that the indictment does not contain "any averment of any facts or circumstances showing or indicating any intention or attempt on the part of the defendant by the supposed use of the words therein ascribed or imputed to the defendant to menace the President of the United States." I have some difficulty in understanding the meaning of this cause of demurrer. If it means that the making of a threat to take the life of or inflict bodily harm upon the President is not punishable unless the person making the threat intends to execute it by killing or inflicting bodily harm upon the President, I cannot recognize the soundness of the proposition. If one wilfully in the hearing of others makes a threat against the life or bodily welfare of the President he is punishable under the act whether he uses the words lightly or with a set purpose to kill or maim. The effect upon the minds of the hearers, who cannot read his inward thoughts, is precisely the same and equally within the scope and obnoxious to the provisions of the act in either case. In view of the policy and broad scope of the act no one who wilfully utters in the hearing of others a threat against the life or limb of the President and thereby inflames or seeks to inflame other minds against constituted authority can shield himself by the plea that the words were uttered lightly or without intent to do bodily harm. If he wilfully utters a threat in the hearing of others he must be held to intend its necessary or probable effect upon other minds.

[5] The 2d cause of demurrer is that the words imputed to the defendant "do not import, express or contain a threat." The words are "The President ought to be shot and I would like to be the one to do

it." It is strongly urged on the part of the defendant that these words do not constitute a threat, but are only the expression of opinion and desire. The contention on the part of the government is that these words are in substance equivalent to the words, "The President ought to be shot, give me the opportunity," or "if I have the opportunity, I will shoot him." A close question is here presented. In United States v. Stickrath, supra, the words were:

"President Wilson ought to be killed. It is a wonder some one has not done it already. If I had an opportunity, I would do it myself."

These words were held to constitute a threat within the meaning of the act. In point of significance I am unable to distinguish in substance the words there used from those set forth in the indictment in hand. The act denounces a threat, and does not distinguish between an absolute threat and one which is conditional. A threat is a threat whether conditional or absolute, and may have an equally sinister effect upon the minds of those hearing it. · Further, the circumstances under which the words were uttered, the manner and tone of the utterance, what else was said on the occasion, and, in short, the res gestæ, may or may not be determinative of the question whether they were intended to operate or operated as a threat. In the absence of any other and sufficient ground of demurrer the words should be submitted to a jury with proper instructions from the court. I am not prepared and think it would be improper at this time to hold the uttered words did not constitute a threat against the life or limb of the President. The 2d cause of demurrer must, therefore, be held insufficient.

[6-8] The 9th cause of demurrer is as follows:

"9. Because the charge and accusation against said defendant of making an alleged threat to take the life of and to inflict bodily harm upon the President of the United States is made and averred in said indictment and in each count thereof, without legal or legally sufficient certainty, to enable said defendant subsequently to plead, enter a previous acquittal or previous conviction upon such charge in that no occasion upon which, and no manner or circumstances by or under which, and no definite place at which, and no means by which, and no person to whom, such alleged threat was made, are with certainty or otherwise averred in said indictment or any count thereof."

If under the act the bare utterance of an oral threat to take the life of or to inflict bodily harm upon the President were a punishable offense per se, whether heard by others or not, all possible prejudice to the defendant arising from the uncertainty pointed out in the 9th cause of demurrer could readily be obviated by means of a bill of particulars furnished by the government. On the above hypothesis each count of the indictment having set forth all of the essential elements of the offense under the act, the filing of a bill of particulars under the order of the court would not involve any usurpation of or encroachment upon the functions of the grand jury. For, while operating to obviate embarrassment in the production of evidence and to render certain the identity of the charge upon which an acquittal or conviction should be had, the bill of particulars would in no sense constitute part of the indictment or in any respect change or affect

the nature of the offense therein set forth. If the sufficiency of an unheard oral threat be assumed, a case would be presented in which the filing of a bill of particulars setting forth the names of the person or persons in whose presence or hearing the threat was made and the circumstances of time and place would not only be permissible but desirable. The disposition of the 9th ground of demurrer is, therefore, dependent upon the question whether the indictment in any of its counts sets forth the essential elements of an oral threat punishable under the act. That point is raised by the 1st ground of demurrer, which is that "neither the indictment nor any count thereof states any offense against the statute." This ground of demurrer, I think, is well taken. An oral threat against the President, unheard by any one, cannot constitute the threat denounced by the statute. In an oral threat contemplated by the statute there are two essential elements: First, the utterance of the words, and, secondly, the hearing of the words by some person or persons other than the utterer. The use of the threatening words in an unheard soliloquy, whatever may be the intent or purpose with which they are uttered, is not an offense punishable under the act. Its manifest purpose was to punish the use by one of threatening words calculated to inflame or have a sinister influence upon the minds of others, and in the case of an oral threat the offense is not complete unless the words are uttered in the hearing of some other person or persons. The latter of the two elements essential to the offense, namely, the hearing of the oral threat as and when uttered, is not contained in the indictment either expressly or by necessary implication. An averment that an oral threat was made does not necessarily imply that it was made in the hearing of any person other than the utterer. If an indictment should be found solely upon the strength of an admission by the defendant, testified to by witnesses, that he had made such threat but not in the hearing of any other person, and not upon any evidence that the threat as and when made was heard by any other person, there could be no conviction. And such supposed case is not inconsistent with the indictment as it stands. In view of the fact that the indictment does not in any of its counts aver expressly or by necessary implication that the oral threat was made in the hearing of any other person or persons it fails to state an essential element of the offense denounced by the act so far as it applies to oral threats. This omission cannot be supplied by the court without usurpation of the functions of the grand jury.

The demurrer must, therefore, be sustained.