**Bruce LUCERO, M.D., and New Woman All Women Health Care, Plaintiffs,**

v.

**Father David TROSCH, the entity calling itself Life Enterprises, its officers, employees and its contractors, and all other individuals, associations, entities and organizations whose legal identities are otherwise unknown to the Plaintiffs at this time with whom Defendants are actually or are attempting to injure, intimidate, or interfere with persons seeking to obtain or provide reproductive health services by force, or threat of force, or by physical obstruction in violation of Federal Law, and any persons, entities, associations or organizations protesting against abortion, and all other persons,**

entities, associations, and organizations acting in concert or participation with the above-named Defendants or on their behalf with notice in any manner or by means prescribed in Fed.R.Civ.P.R. 4, Defendants.

Civ. A. No. 95–0308–CB–M.

United States District Court,
S.D. Alabama,
Southern Division.

Nov. 1, 1995.

Alan M. Pollack, New York City, Timothy M. Beasley, Birmingham, AL, for Bruce Lucero, New Woman All Woman Health Care.

Vincent F. Heuser, Jr., Liberty & Justice, Inc., Louisville, KY, for David Trosch.

Robert Anthony Cothren, Birmingham, AL, for Minzor Chadwick.

Ray O. Noojin, Jr., Birmingham, AL, for Kathleen McConnell.

William E. Swatek, Alabaster, AL, for Eleanor Stisher.

Caryl Privett, U.S. Attorney, Robert S. Vance, Birmingham, AL, for Chris Harding.

## ORDER

BUTLER, Chief Judge.

This matter is before the court on the defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted. After careful consideration of the arguments raised by both parties in their briefs, the court finds that the motion is due to be **GRANTED** in part, and **DENIED** in part.

### I. Factual Background [1]

Plaintiff Bruce Lucero, M.D. ("Lucero") is a physician who provides reproductive health services, including abortions, at the New Woman All Women Health Care Clinic in Birmingham, Alabama. On October 5, 1994, Lucero and defendant Fr. David Trosch ("Trosch") appeared as guests on the *Geraldo Show*, which was filmed in New York, New York. Transcripts of the show indicate that Trosch's responses to questions posed by the program's host included the following:

Q: —Father David Trosch would you murder an abortion doctor if you had the gun in your hand?

A: No, I would not murder him, but I would kill him, there's a difference.

\*    \*    \*    \*    \*    \*

Q: Sitting along side you, Dr. Bruce Lucero, a doctor who admits to performing abortions—

A: —he is a mass murder—

Q: —would you kill him?

A: He is a mass murderer and should be dead. Absolutely.

Q: He should be dead?

---

1. For the purposes of the motion to dismiss, the factual allegations in the amended complaint are accepted as true.

A: Should be dead.

\* \* \* \* \* \*

Q: Father Trosch, do you have the courage to say that you would kill him?

A: He deserves to be dead, [a]bsolutely.

*Geraldo Show* Transcript (Exhibit A to Defendant's Brief), at 2, 3.[2]

Two months previously, in August 1994, Trosch appeared on the *Shelly Stewart Show*, which was filmed in Birmingham, Alabama. The tenor of Trosch's remarks on *Shelly Stewart* was generally similar to that of his comments on *Geraldo*, as he asserted that those who provide abortions should be killed and suggested that he could possibly kill one who performed abortions.[3] Lucero was not present at the show's taping, and none of Trosch's statements on *Shelly Stewart* made specific reference to Lucero.

Lucero and the business at which he works, New Woman All Women Health Care Clinic, brought this action in the Northern District of Alabama, alleging that Trosch's conduct on the *Geraldo Show* and the *Shelly Stewart Show* violated the Free Access to Clinic Entrances Act, or "F.A.C.E." (hereinafter "the Access Act" or "the Act"), 18 U.S.C. § 248.[4] The complaint also asserted a state-law claim for private nuisance. Trosch filed a motion to dismiss the action on the grounds of failure to state a claim upon which relief can be granted and improper venue. By order dated April 14, 1995, Judge Propst transferred the action to this court on the ground that venue did not properly lie in the Northern District of Alabama.[5]

II. Discussion

Trosch's motion to dismiss consists of three principal arguments, to-wit: (1) his statements were beyond the purview of the Access Act; (2) the Access Act is unconstitutional under the First, Fifth, Eighth, Tenth, and Fourteenth Amendments to the Constitution; and (3) there is no valid basis in Alabama law for the nuisance claim asserted against Trosch. Each of Trosch's contentions shall be considered in turn.

*A. Applicability of the Access Act*

The Access Act creates a civil right of action against anyone who

"by force or threat of force or by physical obstruction, intentionally injures, intimi-

---

2. The exchanges cited herein contain the only responses in which Trosch directly referred to Lucero. However, the transcripts indicate that Trosch made many other comments containing his views that all physicians who perform abortions, as well as their "accomplices", should be killed in defense of innocent human life.

3. In particular, the following exchange took place on *Shelly Stewart:*
    Q: If everyone listened to you, there would be people by the hundreds, by the thousands killed, wouldn't you say?
    A: No, not at all. I believe if 20, 30, 40 doctors, abortionists, their staffs were killed, the rest of them would get out of the business.
    \* \* \* \* \* \*
    Q: Would you possibly yourself, pull the trigger and kill someone for performing an abortion?
    A: Let me put it this way, Elijah slit the throats of 450 profits [sic] of Al because of the evil they did, and they were not even murderers, so if Elijah could do it I suppose I could.
    Q: You could kill?
    A: In defense of innocent human beings, yes.
    First Amended Complaint (containing excerpts of *Shelly Stewart Show* transcript), at 5.

4. The complaint quotes a number of statements by Trosch, both from the *Geraldo Show* and from the *Shelly Stewart Show*, regarding physicians who provide abortions, in general. Because the plaintiffs' claims necessarily rest on Trosch's comments regarding Lucero directly, Trosch's other comments shall not be considered for the purposes of the motion to dismiss except insofar as they provide context for the statements at issue. As Judge Propst observed, "[n]one of Trosch's statements on *Shelly Stewart* constitutes a threat *against Dr. Lucero*. None of the statements were directed to Dr. Lucero. Dr. Lucero was never even mentioned on the program.... As such, Trosch's statements on *Shelly Stewart* cannot constitute a substantial portion of the factual predicate to plaintiffs' claims against Trosch." Memorandum Opinion dated April 15, 1995 (tab 57), at 8. The court agrees with Judge Propst; therefore, the bulk of the court's analysis shall be directed to the specific statements made by Trosch on the *Geraldo Show* concerning Lucero.

5. Contrary to the plaintiffs' suggestion to this court, Judge Propst's order did not address the merits of the motion to dismiss for failure to state claim upon which relief can be granted.

dates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services." 18 U.S.C. § 248(a)(1). Trosch contends that his words on the *Geraldo Show* did not rise to the level of force, threats of force, or physical obstruction sufficient to trigger the Access Act right of action, and that Lucero's claim for relief under the Act must be dismissed on that basis. In the alternative, Trosch contends that the Access Act is inapplicable because the statute excludes expressive conduct protected by the First Amendment.

### 1. Trosch's Statements as "Threats of Force"

■ Although the Access Act itself does not specifically define the term "threat of force", the Eleventh Circuit has elaborated on the term slightly, construing it as a "threat of physical force placing a person in reasonable apprehension of bodily harm." *Cheffer v. Reno*, 55 F.3d 1517, 1521 (11th Cir.1995); *see also U.S. v. Brock*, 863 F.Supp. 851, 857 (E.D.Wis.1994) (the Access Act is limited to "true threats", meaning those which could reasonably produce in victim a fear that threat would be carried out). Moreover, the court may obtain guidance from the multitude of cases defining the terms "threat" or "threat of force" in the context of analogous statutory provisions. These opinions indicate that a threat is a statement made "under such circumstances that a reasonable person would construe [it] as a serious expression of an intention to inflict bodily harm upon or to take the life of the persons named in the statute." [6] *U.S. v. Callahan*, 702 F.2d 964, 965 (11th Cir.1983) (interpreting 18 U.S.C. § 871). In the Eleventh Circuit, the test is an objective one

which does not turn on the speaker's actual intentions. *Id.* at 965–66.

■ The court is unwilling to conclude as a matter of law that Trosch's statements, as set forth in Lucero's complaint, do not constitute threats of force actionable under the Access Act. *See U.S. v. Stobo*, 251 F. 689 (D.C.Del.1918) (whether statement that "The President ought to be shot and I would like to be the one to do it" constituted a threat was a question for jury); *U.S. v. Stickrath*, 242 F. 151 (D.C.Ohio 1917) (statement that President ought to be killed and that if he had the opportunity to do it, speaker would do so himself constituted threat). According to the complaint, Trosch said that Lucero "should be dead" and that he would kill an abortion doctor if he had a gun in his hand. Given the complaint's allegations of Trosch's words and the context in which they were spoken, the court cannot hold that a reasonable recipient could not have interpreted them as a serious expression of an intent to inflict bodily harm or death upon him.

Trosch argues that his statements on the *Geraldo Show* could not be construed as threats under the Access Act because: (1) they did not indicate any conduct by Trosch; (2) they did not express any intent to engage in future actions; and (3) they were not directed at Lucero. This argument must fail. Trosch has presented no case law stating that the three criteria outlined above are essential components of a threat; indeed, the weight of the precedents cited previously is at odds with such a legal construction of the term threat. More fundamentally, Trosch's contentions are meritless because they merely advance one interpretation of his statements on *Geraldo*. Based on the allegations before the court, other reasonable interpretations are possible. The court cannot foreclose the possibility that a reasonable recipient of Trosch's comments could have con-

---

**6.** This construction of an unlawful threat is consistent with that adopted by many other courts in many other statutory contexts. *See, e.g., U.S. v. Aman*, 31 F.3d 550, 553 (7th Cir.1994) (true threat exists when recipient could reasonably have regarded statement as threat); *U.S. v. Malik*, 16 F.3d 45, 49 (2d Cir.1994) (threat may be found where ordinary, reasonable recipient familiar with its context would interpret it as a threat of injury); *U.S. v. Bellrichard*, 994 F.2d 1318, 1323 (8th Cir.1993) (key issue in analyzing threat is whether reasonable recipient familiar with context would interpret it as a threat); *Wurtz v. Risley*, 719 F.2d 1438, 1441 (9th Cir. 1983) (threats are punishable if they bear reasonable tendency to produce in victim a fear that threat will be carried out).

strued his remarks as satisfying all three of the articulated criteria.[7] The fact that Trosch did not expressly state to Lucero that he was going to kill Lucero at some future time does not preclude a reasonable factfinder from determining that a threat was in fact made to Lucero. *See U.S. v. Malik,* 16 F.3d 45, 50 (2d Cir.1994) (threatening nature of communication may arise from reasonable connotations derived from its ambience); *U.S. v. Gilbert,* 884 F.2d 454, 457 (9th Cir. 1989) (the fact that a threat is subtle does not render it any less of a threat); *U.S. v. Cox,* 957 F.2d 264, 266 (6th Cir.1992) (a specific individual as a target of the threat need not be identified as such).

### 2. Trosch's Statements as Expressive Conduct

Trosch next contends that the Access Act is inapplicable because the statute specifically excludes from its reach "any expressive conduct protected from legal prohibition by the First Amendment to the Constitution." § 248(d)(1). Trosch asserts that his statements which aired on the *Geraldo Show* constituted protected speech under the First Amendment; therefore, he claims, Lucero is barred from invoking the civil remedies which would otherwise be available to him under the Access Act.

■ It is widely recognized that true threats of force are not cloaked in the protections afforded other types of speech by the First Amendment. *See Watts v. U.S.,* 394 U.S. 705, 707, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664 (1969) (holding that "[w]hat is a threat must be distinguished from what is constitutionally protected speech"); *American Life League, Inc. v. Reno,* 47 F.3d 642, 648 (4th Cir.1995) (threats of force targeted by the Access Act are not protected by First Amendment). In fact, there are numerous federal statutes which proscribe threats and threats of force.[8] These statutes have been upheld routinely against First Amendment challenges, with courts adopting the rationale that threats are not protected speech. *See, e.g., Watts,* 394 U.S. at 707–08, 89 S.Ct. at 1401–02.

■ The defendant's argument that his comments on *Geraldo* are expressive conduct protected by the First Amendment represents the flipside of his contention that the statements were not threats of force. If Trosch's remarks on the *Geraldo Show* were threats of force, then they cannot receive First Amendment protection. Given the court's conclusion that the Access Act claim may not be dismissed on the ground that Trosch's statements did not constitute threats of force, logic compels the court not to dismiss the claim on the ground that Trosch's statements were expressive conduct protected by the First Amendment and beyond the scope of the Access Act. Therefore, the court cannot find as a matter of law that the expressive conduct exclusion of 18 U.S.C. § 248(d)(1) bars Lucero's cause of action under the Access Act.

### B. Constitutionality of the Access Act

Trosch next advances a number of constitutional challenges to the Access Act. In particular, Trosch contends that the Act exceeds Congress' power under the Commerce Clause and violates the First, Fifth, Eighth, and Fourteenth Amendments.

---

7. Indeed, taken in the light most favorable to the plaintiff, the facts easily comply with all of the criteria urged upon this court by the defendant. Specifically, the facts can support the conclusion that Trosch's comments constituted statements of intent to kill Lucero in the future, and that such statements were directed at Lucero who was, after all, sitting next to Trosch at the time that he expressed such sentiments on the *Geraldo Show.*

8. Such statutory provisions include 18 U.S.C. § 112(b) (making it unlawful to threaten a foreign official in the performance of his duties); 18 U.S.C. § 115 (criminalizing threats to United States Judges or other federal officers in the performance of their official duties); 18 U.S.C. § 241 (providing criminal penalties for conspiracies to threaten persons for enjoying rights and privileges of United States laws); 18 U.S.C. § 245 (outlawing threats against persons engaging in certain federally protected activities); 18 U.S.C. § 372 (making it unlawful to conspire to prevent by threat a person from accepting or holding any office); 18 U.S.C. § 871 (rendering it illegal to make threats of violence against the President or Vice President); 18 U.S.C. § 875 (barring transmission in interstate commerce of communications containing threats); 18 U.S.C. § 876 (creating criminal sanctions for mailing of threatening communications).

### 1. Commerce Clause

The defendant maintains that the Access Act should be struck down because Congress lacked the constitutional authority to pass such a statute. According to the defendant, Congress' passage of the Act therefore violates the Tenth Amendment because such action was not a valid exercise of authority delegated to it by the Constitution. The defendant argues that the Commerce Clause cannot provide the requisite authority for the Act because the statute does not regulate activity which bears a rational connection to interstate commerce.

■ A recent Eleventh Circuit opinion severely undermines the defendant's position. In *Cheffer v. Reno*, 55 F.3d 1517, 1519–20 (11th Cir.1995), the court expressly found that "the Access Act is within Congress' Commerce power." *Id.* at 1520. In support of this ruling, the *Cheffer* court examined Congressional findings regarding: (1) the existence of an interstate market for both providers and recipients of reproductive health services; and (2) the substantiality of the threat posed by activity proscribed by the Act to interstate commerce in such services. *Id.* Because these findings provide a rational basis for the conclusion that Access Act regulates activity which substantially affects interstate commerce, the Eleventh Circuit held that the Act constituted a valid exercise of Congressional power under the Commerce Clause. *Id.; see also American Life League, Inc. v. Reno*, 47 F.3d 642, 647 (4th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 55, 133 L.Ed.2d 19 (1995). In light of *Cheffer* and in the absence of any authority to the contrary, the court rejects Trosch's contention that the Act exceeded the authority granted Congress by the Commerce Clause and therefore violated the Tenth Amendment.

### 2. First Amendment

Trosch next contends that the Act is facially invalid because it violates the First Amendment. He argues that the statute's prohibition on threats and intimidation represents a facially content-based restriction aimed at silencing anti-abortion speech regardless of whether such speech causes or incites others to cause harm to providers or recipients of reproductive health services.

■ This argument is also meritless. The Fourth Circuit has concluded that the Access Act is viewpoint and content neutral because it punishes anyone who engages in the proscribed conduct. *American Life League*, 47 F.3d at 649. The court noted that "a statute is not rendered nonneutral simply because one ideologically defined group is more likely to engage in the proscribed conduct." *Id.* at 651. Because of the Act's neutrality, the *American Life League* court applied intermediate scrutiny test set forth by the Supreme Court in *U.S. v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). The court concluded that:

> "the Access Act serves substantial government interests such as preventing violence, preserving public access to reproductive health services, and protecting citizens in their exercise of constitutional rights. It is not aimed at expression, and it is narrowly tailored. It passes *O'Brien*'s test." *Id.* at 652.

The Eleventh Circuit has expressly followed the lead of the Fourth Circuit by adopting the *American Life League* rationale as it relates to free speech issues under the Access Act. *See Cheffer*, 55 F.3d at 1521. The *Cheffer* court "readily conclude[d] that the Access Act is not content or viewpoint based, is not unconstitutionally vague or overbroad, and does not violate appellants' First Amendment rights." *Id.* at 1521–22. Therefore, Trosch's First Amendment challenge to the Access Act has no legal basis under binding Eleventh Circuit precedent.

### 3. Fifth and Fourteenth Amendments

Trosch's third constitutional attack on the Access Act is that it violates the equal protection guarantees of the Fifth and Fourteenth Amendments. Trosch stresses that the Act selectively imposes speech restrictions and is targeted against those who espouse anti-abortion viewpoints. Invoking the example of labor protests, Trosch contends that the Act differentiates between anti-abortion picketing and other forms of picketing, in violation of the equal protection principles articulated by the Supreme Court in *Police*

*Dept. of City of Chicago v. Mosley,* 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972).

■ Trosch's equal protection challenge is unpersuasive on two distinct levels. First, as mentioned previously, the Eleventh Circuit has previously found the Act to be both viewpoint- and content-neutral. *See Cheffer,* 55 F.3d at 1521.[9] Therefore, the court rejects the very premise of Trosch's argument that the statute violates equal protection because it targets anti-abortion speech. Second, although the statute potentially regulates conduct that may have expressive elements,[10] the Eleventh Circuit has also adopted the *American Life League* rationale that the statute passes muster under intermediate scrutiny as being narrowly tailored to meet legitimate government objectives. *Id.; see American Life League,* 47 F.3d at 651–52. Therefore, even if it were not content-neutral, the Act would not run afoul of the Equal Protection Clause. No circuit court has expressly addressed an equal protection challenge to the Access Act; however, several district courts examining such attacks have reached the same conclusion set forth above. *See U.S. v. Dinwiddie,* 885 F.Supp. 1286, 1289 (W.D.Mo.1995) (holding that the Access Act does not violate the equal protection clauses of the Fifth and Fourteenth Amendments); *Riely v. Reno,* 860 F.Supp. 693, 705–06 (D.Ariz.1994) (same).

The court pauses to consider Trosch's argument that the statute violates equal protection because it treats anti-abortion picketing and labor picketing differently. In *Mosley,* 408 U.S. at 93, 92 S.Ct. at 2288, the Supreme Court examined an ordinance which banned all forms of picketing near school grounds except for peaceful labor picketing. The Court struck down the ordinance be-

cause of its "wholesale exclusion of picketing on all but one preferred subject", which exclusion laid bare the poor fit between the ordinance and the city's stated interest in preventing school disruption. *Id.* at 100–02, 92 S.Ct. at 2292–93. Trosch argues that if the Access Act excludes labor picketing, then it is unconstitutional for the same reason that the *Mosley* ordinance was held invalid. If labor picketing is within the scope of the Act, however, Trosch contends that it alters the standard to be applied to labor protests.[11]

The court finds Trosch's reliance on *Mosley* to be misplaced for two reasons. First, unlike the ordinance at issue in *Mosley,* the Access Act does not expressly exclude labor picketing from its ambit. If labor protesters make threats of force or physically obstruct clinic entrances in an attempt to injure, intimidate, or interfere with any person because that person obtains or provides reproductive health services, then the Access Act clearly applies to them, as it would to any other protesters engaging in such threatening or physically obstructive conduct. *See* 18 U.S.C. § 248(a)(1). If, on the other hand, labor protesters engage in peaceful picketing or other peaceful demonstration, then the Access Act clearly excludes them, just as it would any anti-abortion or other protester engaging in peaceful picketing or demonstration. *See* 18 U.S.C. § 248(d)(1). In short, the Access Act makes no distinction whatsoever between labor protesters and anti-abortion protesters. Therefore, *Mosley* is inapposite.

Second, even if labor protesters were treated differently from anti-abortion protesters under the Access Act, the court could not invalidate the statute under a *Mosley* rationale. The *Mosley* ordinance was invalid

---

**9.** The *Cheffer* court did not face an equal protection challenge to the Access Act. Because of the similarity between the First Amendment and equal protection arguments raised by Trosch, however, *Cheffer*'s First Amendment rationale is applicable with equal force to the equal protection claim, as well.

**10.** As the Fourth Circuit opined:
"[T]he Act cannot escape First Amendment scrutiny entirely. The Act might incidentally affect some conduct with protected expressive elements, such as peaceful but obstructive

picketing." *American Life League,* 47 F.3d at 648.

**11.** The degree and extent of constitutional protection afforded labor protests is not at issue in this action. Therefore, this court will refrain from examining the applicable standards of labor protection pre- and post-Act, but will limit the discussion to the relevant question in this case, namely, whether labor protests are in fact treated differently than anti-abortion protests under the Access Act.

not because it distinguished between labor picketing and other picketing per se, but because such a distinction undermined the ostensible reason for the ordinance and betrayed the city's intention to suppress messages from disfavored speakers only. *See Mosley,* 408 U.S. at 100, 92 S.Ct. at 2292. By contrast, the government's stated interest in the present case is not to prevent disruption, but to preserve public access to reproductive health services and to protect men and women from violence and threats in the exercise of their rights. An exclusion of labor picketing could be squared with those asserted interests, because Congress could rationally have determined that labor protests impose less of a threat to those interests than do other forms of protest. Stated somewhat differently, *Mosley* does not apply to the Act because the Act was narrowly tailored to achieve government objectives. Regardless of whether or not labor picketing is excluded, the finding that the Act was narrowly tailored remains unchanged; therefore, Trosch cannot rely on *Mosley* to invalidate the Act on equal protection grounds. *See generally U.S. v. Brock,* 863 F.Supp. 851, 863 (E.D.Wis.1994) (distinguishing Access Act from *Mosley* ordinance); *Riely v. Reno,* 860 F.Supp. 693, 705–06 (D.Ariz.1994) (same).

### 4. Eighth Amendment

The defendant's final constitutional claim is that the Access Act violates the Eighth Amendment by inflicting cruel and unusual punishments and by imposing excessive fines. Defendant's sole objection on this front is apparently that the criminal penalties set forth in 18 U.S.C. § 248(b) violate the Eighth Amendment because the criminal penalties imposed are greatly disproportionate to the offense.[12]

The court declines to consider the merits of the defendant's Eighth Amendment challenge to the Access Act. Although defendant urges the court to find the criminal penalties imposed by the statute unconstitu-

tional under the Eighth Amendment, the present action is not a criminal prosecution. On the contrary, the plaintiff in this case invokes only the civil remedies authorized by the statute. Accordingly, the doctrines of standing and ripeness preclude this court from ruling on the defendant's claim that the Act's criminal penalties constitute cruel and unusual punishment. *See, e.g., Cheffer,* 55 F.3d at 1523–24 (pre-enforcement Eighth Amendment challenge to Access Act rejected on ripeness grounds); *Sims v. State of Fla., Dept. of Highway Safety and Motor Vehicles,* 862 F.2d 1449, 1458–59 (11th Cir.1989) (standing requires that "plaintiff must allege personal injury fairly traceable to the challenged conduct and a likelihood that the requested relief will redress such injury").

If this court were to declare the criminal penalties of the Access Act unconstitutional, such a ruling would have no bearing whatsoever on this lawsuit, in which the plaintiff seeks to enforce only the civil remedies available under the Act. Therefore, it is clear that Trosch has alleged no personal injury traceable to the allegedly unconstitutional component of the statute, and lacks standing to pursue his Eighth Amendment claim. Furthermore, although Trosch objects to the magnitude of the statutory criminal penalties, the statute sets forth only the maximum penalties, leaving trial courts with broad discretion in assessing the actual penalties to be applied in a particular case. "[W]e cannot determine from the face of the Act what penalties will actually be imposed. We can only speculate as to whether the future applications urged by [defendant] will come to pass." *Cheffer,* 55 F.3d at 1524. Trosch's Eighth Amendment claim lacks ripeness because it is premised on a series of contingent future events which have not yet occurred. Therefore, the asserted Eighth Amendment challenge fails on both ripeness and standing grounds.

---

**12.** The portion of section (b) with which the defendant apparently takes issue reads as follows: "[F]or an offense involving exclusively a nonviolent physical obstruction, the fine shall be not more than $10,000 and the length of imprisonment shall be not more than six months, or both, for the first offense; and the fine shall, notwithstanding section 3571, be not more than $25,000 and the length of imprisonment shall be not more than 18 months, or both, for a subsequent offense." 18 U.S.C. § 248(b).

*C. Nuisance Claim*

Count II of plaintiffs' first amended complaint claims that defendant's conduct constitutes a private nuisance because defendant interfered with plaintiffs' use and enjoyment of the property on which the New Woman All Women Health Care clinic is located. Apparently, the gravamen of this allegation is that Trosch's comments on the *Geraldo Show* so intimidated plaintiffs that their ability to use and enjoy the land upon which they perform reproductive health services has been circumscribed.

■ The Alabama Supreme Court has repeatedly defined a private nuisance as:

"any establishment, erected on the premises of one, though for the purposes of trade or business, lawful in itself, which, from the situation, the inherent qualities of the business, or the manner in which it is conducted, directly causes substantial injury to the property of another, or produces material annoyance and inconvenience to the occupants of adjacent dwellings, rendering them physically uncomfortable...."

*Baldwin v. McClendon,* [292 Ala. 43] 288 So.2d 761, 765 (Ala.1974); *Coleman v. Estes,* [281 Ala. 234] 201 So.2d 391 (Ala. 1967).

*See also* Ala.Code § 6–5–120 (defining nuisance as "anything that works hurt, inconvenience or damage to another"); *Lauderdale County Board of Education v. Alexander,* 269 Ala. 79, 110 So.2d 911 (1959) (statutory definition of nuisance is declaratory of common law and does not supersede it); *Acker v. Protective Life Ins. Co.,* 353 So.2d 1150 (Ala. 1977) (law of nuisance rests on common-law principle that every man must so use his property as not to injure that of his neighbor); *Banks v. Harbin,* 500 So.2d 1027 (Ala. 1986) (concept of nuisance involves idea of recurrence of acts causing injury); *Morgan County Concrete Co. v. Tanner,* 374 So.2d 1344, 1346 (Ala.1979) (examples of nuisance include smoke, offensive odors, noise or vibrations when occurring to such degree as to pose a substantial and unreasonable interference with use and enjoyment of land).

■ In light of the foregoing principles, the court finds that Count II fails to state a claim upon which relief can be granted. The defendant's statements, uttered on a single occasion more than one year ago in a New York studio hundreds of miles from the plaintiffs' property, simply cannot constitute an actionable nuisance under Alabama law. Even if all of plaintiffs' allegations are true, the conduct in question occurred but one time, involved no use of defendant's land, and did not directly interfere with plaintiffs' use and enjoyment of their land in a substantial, unreasonable manner. Certainly, no diminution of the reasonable use value of the land could have occurred. The fact that plaintiffs may feel intimidated while they use their land in a certain manner is not sufficient to create a cause of action for nuisance. *See Maranatha Temple, Inc. v. Enterprise Products Co.,* 893 S.W.2d 92, 100 (Tex.App.1994) (plaintiff's fear that industrial accidents will occur on neighboring property insufficient to support nuisance action); *Akins v. Sacramento Municipal Utility District,* 6 Cal. App.4th 1605, 8 Cal.Rptr.2d 785, 811 (1992) ("fear, anxiety, and emotional distress which are not caused by an interference with a specific property right ... will not support an action for nuisance."). Therefore, defendant's motion to dismiss is **GRANTED** as to the nuisance count of the complaint.

III. Conclusion

For all of the foregoing reasons, defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted is **DENIED** as to Count I of the complaint, and **GRANTED** as to Count II of the complaint.

It is so **ORDERED.**