**UNITED STATES of America, et al.**

v.

**Stanley G. SCOTT, et al.**

**No. 3:95CV1216(AHN).**

United States District Court,
D. Connecticut.

March 18, 1996.

Richard Blumenthal, Attorney General of the State of Connecticut, Hartford, CT, Sharon E. Jaffe, Office of the U.S. Atty., New Haven, CT, for plaintiffs.

Bruce W. Green, American Family Assn. Law Center, Tupelo, Mississippi, for defendants.

### RULING ON MOTIONS TO DISMISS

NEVAS, District Judge.

In this civil action, the United States and the State of Connecticut (collectively the "United States") allege that the defendants, Stanley Scott ("Scott"), Bobby Riley ("Riley"), and Carmen Vazquez ("Vazquez") (collectively the "defendants") violated the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248 (1994) ("FACE"). The United States alleges that Scott, Riley, and Vazquez repeatedly have used force, threats of force, and physical obstruction against the staff, escorts, clients, and companions of clients of the Summit Women's Center ("Summit"), a reproductive health facility located in Bridge-port, Connecticut. In its Amended Complaint, the United States identifies twenty-nine specific incidents and alleges that the defendants committed these acts with the intent to intimidate and interfere with Summit's ability to provide abortions and its clients' ability to obtain such medical services.

The defendants argue that Congress exceeded the scope of its enumerated powers under the Commerce Clause and Section 5 of the Fourteenth Amendment of the United States Constitution in enacting FACE and that the statute therefore is unconstitutional. They thus move to dismiss the Amended Complaint.

For the following reasons, the motions to dismiss the Amended Complaint [docs. ## 12, 15] are DENIED.[1] Because the court finds that Congress did not exceed its authority under the Commerce Clause in enacting FACE, the court does not address whether the Fourteenth Amendment provides an independent basis of legislative power supporting FACE's enactment.

### DISCUSSION

Congress may regulate three broad categories of conduct under the Commerce Clause. *See United States v. Lopez,* — U.S. —, 115 S.Ct. 1624, 1629–30, 131 L.Ed.2d 626 (1995). First, it may regulate the use of the channels of interstate commerce. *Id.,* 115 S.Ct. at 1629. Second, Congress may regulate and protect the instrumentalities of interstate commerce or persons or things in interstate commerce. *Id.* Third, Congress may regulate those activities that substantially affect interstate commerce. *Id.* at 1629–30.

 "The task of a court that is asked to determine whether a particular exercise of congressional power under the Commerce Clause is valid is relatively narrow." *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 276, 101 S.Ct. 2352, 2360, 69 L.Ed.2d 1 (1981). In reviewing the constitutionality of a federal statute under the

---

1. Riley and Vazquez jointly filed a motion and memorandum of law seeking to dismiss this action. Scott filed a separate motion to dismiss and relied on the memorandum submitted by Riley and Vazquez.

Commerce Clause, the court must defer to a congressional finding that the regulated activity substantially affects interstate commerce if there is a rational basis for such a finding. *See Lopez,* 115 S.Ct. at 1629 (citations omitted); *see also Hodel,* 452 U.S. at 276, 101 S.Ct. at 2360 (citations omitted). If a rational basis exists, the court then must determine whether "the means chosen by [Congress] [are] reasonably adapted to the end permitted by the Constitution." *See Hodel,* 452 U.S. at 276, 101 S.Ct. at 2360 (internal quotation marks and citations omitted).

■ Applying this rational basis standard of review, the court holds that FACE is a constitutional exercise of Congress's authority under the Commerce Clause to regulate those activities that substantially affect interstate commerce. *Cf. United States v. Dinwiddie,* 76 F.3d 913, 920–21 (8th Cir.1996); *United States v. Wilson,* 73 F.3d 675, 687 (7th Cir.1995); *Cheffer v. Reno,* 55 F.3d 1517, 1521 (11th Cir.1995); *American Life League, Inc. v. Reno,* 47 F.3d 642, 647 (4th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 55, 133 L.Ed.2d 19 (1995); *United States v. White,* 893 F.Supp. 1423, 1433–34 (C.D.Cal.1995); *Lucero v. Trosch,* 904 F.Supp. 1336, 1341–42 (S.D.Ala.1995); *United States v. Lucero,* 895 F.Supp. 1421, 1423–24 (D.Kan.1995); *United States v. Hill,* 893 F.Supp. 1034, 1036 (N.D.Fla.1994); *Riely v. Reno,* 860 F.Supp. 693, 708 (D.Ariz.1994); *Council for Life Coalition v. Reno,* 856 F.Supp. 1422, 1431 (S.D.Cal.1994). The court declines to decide, however, whether FACE also fits within the first and second categories.

In enacting FACE, Congress made four principal findings concerning the effect on interstate commerce of violent, obstructive, destructive, and threatening activities directed against women seeking abortions and the providers of such services. First, Congress found that abortion clinics operate within the stream of interstate commerce, *see, e.g.,* S.Rep. No. 117, 103d Cong., 1st Sess. 31 (1993); H.R.Conf.Rep. No. 488, 103d Cong., 2d Sess. 7 (1994), *reprinted in* 1994 U.S.C.C.A.N. 724, and that the obstruction of a facility brings the interstate commercial activity of that facility to a halt. *See, e.g.,* S.Rep. at 31. Second, Congress found that individuals travel interstate to obtain and to provide abortions. *See, e.g.,* S.Rep. at 3, 31; H.R.Conf.Rep. at 7; H.R.Rep. No. 306, 103d Cong., 2d Sess. 6–7 (1993), *reprinted in* 1994 U.S.C.C.A.N. 699, 704. Third, Congress found that the obstruction of abortion clinics decreases the availability of abortion services nationwide. *See, e.g.,* S.Rep. at 11, 14; H.R.Rep. at 8. Fourth, Congress found that the campaign of blockades, invasions, vandalism, threats, and other violence designed to eliminate abortion was national in scope, *see, e.g.,* H.R.Rep. No. at 6, often beyond the ability of state and local governments to control, *see, e.g., id.* at 7, 10, and sometimes the willingness of local law enforcement officers to confront. *See, e.g., id.* at 6; S.Rep. at 19.

Like numerous federal courts that have addressed this issue, the court finds that Congress's first three findings provide a rational basis for concluding that the conduct prohibited by FACE substantially affects interstate commerce.[2] *See, e.g., Dinwiddie,* 76 F.3d at 919–21; *Wilson,* 73 F.3d at 679–82; *Cheffer,* 55 F.3d at 1519; *American Life League,* 47 F.3d at 647. The court further finds that the statute's prohibitions are reasonably related to Congress's legitimate goal of deterring violent, obstructive, threatening, and destructive activities designed to eliminate patients' access to, and health-care providers' provision, of abortions. *See, e.g., American Life League,* 47 F.3d at 647.

Accordingly, the court holds that FACE is a constitutional exercise of Congress's powers under the Commerce Clause.

The Supreme Court's recent decision in *United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), does not compel a different conclusion. In *Lopez,* the Court held that Congress exceeded the "outer limits" of its power under the Commerce Clause in enacting the Gun–Free School

---

**2.** Although the Seventh Circuit has stated that Congress's fourth finding itself does not demonstrate that the conduct proscribed by FACE substantially affects interstate commerce, *see Wilson,* 73 F.3d at 682, it did note that the finding confirmed that Congress sought to address "an interstate problem rather than a multistate, intrastate problem" in enacting FACE. *Id.*

Zones Act of 1990.[3] In reaching that holding, the Court observed that the Gun–Free School Zones Act "by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms," *id.,* 115 S.Ct. at 1630–31, that Congress had failed to make any findings concerning the effects on interstate commerce of possession of a gun in a school zone, *id.* at 1631–32, and that the statute lacked a jurisdictional element "which would ensure, through a case-by-case inquiry, that the firearm in question affects interstate commerce." *Id.* at 1631.

The defendants contend that *Lopez* holds that Congress may not regulate non-commercial, intrastate activities under its Commerce Clause power. They argue that FACE, like the Gun–Free School Zones Act, regulates intrastate activities that are neither commercial nor economic in nature—protesting at abortion clinics.

As the Seventh, Eighth, and Eleventh Circuits have stated, "[t]here is no authority for the proposition that Congress's power extends only to the regulation of commercial entities." *Dinwiddie,* 76 F.3d at 920; *Wilson,* 73 F.3d at 684; *Cheffer,* 55 F.3d at 1520 n. 5. Indeed, the federal courts have upheld numerous statutes regulating private conduct affecting commercial entities or activities. *See Cheffer,* 55 F.3d at 1520 n. 6 (citing cases).

Further, FACE "falls far short of the line crossed by the Gun–Free School Zones Act in *Lopez.*" *Wilson,* 73 F.3d at 686. In sharp contrast to Gun–Free School Zones Act, FACE regulates a commercial activity—the provision of reproductive health services. *See Dinwiddie,* 76 F.3d at 920–21; *Wilson,* 73 F.3d at 683; *Cheffer,* 55 F.3d at 1520–21. Moreover, in enacting FACE, Congress made specific findings about the effect on interstate commerce of the obstruction of abortion clinics. *See Wilson,* 73 F.3d at 683. Finally, even though FACE, like the Gun–Free School Zones Act, lacks an "interstate commerce" element, such a jurisdictional element is not required. *See, e.g., Perez v.*

*United States,* 402 U.S. 146, 153–54, 91 S.Ct. 1357, 1361, 28 L.Ed.2d 686 (1971).

Intertwined with their Commerce Clause argument, the defendants also argue that FACE represents an unwarranted federal intrusion into the states' primary authority to define and enforce criminal law and thus upsets the balance of power between the federal and state governments. This argument also is flawed, for *Lopez* did not question "the well-established principle that Congress may regulate conduct even though that conduct already violates state law...." *Wilson,* 73 F.2d at 683 (citations omitted).

*Lopez* is a significant case. The defendants, however, overstate that significance. *Cf. Wilson,* 73 F.3d at 685–86. The *Lopez* Court did not overturn any Commerce Clause precedent; rather, the Court characterized its decision as a refusal to expand the Congress's Commerce Clause power, not as a departure from its Commerce Clause jurisprudence. *See Lopez,* 115 S.Ct. at 1634; *see also id.* at 1637 (Kennedy, J., concurring). *Lopez* indeed may herald the beginning of a less expansive judicial interpretation of Congress's authority under the Commerce Clause. Contrary to the defendants' arguments, however, FACE does not suffer from the same infirmities as the Gun–Free School Zones Act in *Lopez. Cf. Wilson,* 73 F.3d at 686. Accordingly, the court holds that FACE is a constitutional exercise of Congress's powers under the Commerce Clause.

### CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss [docs. ## 12, 15] are DENIED.

SO ORDERED.

---

**3.** The statute made it a federal crime "for any individual knowingly to possess a firearm at a place that the individual knows, or has reason-able cause to believe, is a school zone." *See* 18 U.S.C. § 922(q)(1)(A) (Supp. II 1990).